**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Erus Builders LLC, | No. CV-14-02686-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Volt Solar Systems Incorporated, et al., | |
| Defendants. | |

Pending before the Court are Plaintiff Erus Builders, LLC's Ex Parte Application to Amend Case Management Order, or Alternatively, to Vacate Dates and Schedule New Case Management Conference (Doc. 64), Erus' Notice of Joinder of Parties Pursuant to Rules 15 and 20 of the Federal Rules of Civil Procedure (Doc. 66),[1] Erus' Motion to Compel Deposition of Defendant Malcolm Adler (MAdler) (Doc. 69), and MAdler's Motion for a Referral to a Magistrate Judge for a Settlement Conference (Doc. 94). Below, the Court addresses these Motions.

## I.   Motion to Amend Case Management Order

Erus requests the Court extend the discovery deadlines in this matter because: (1) the Court previously stayed the proceedings for two months; (2) MAdler's discovery responses are incomplete; (3) Wells Fargo did not produce full documents in response to a subpoena; (4) Erus seeks to add additional parties to this action "which will not only

---

[1] On April 12, 2016, the Court denied Erus' request to join parties pursuant to Rule 19 of the Federal Rules of Civil Procedure.  (Doc. 95.)

require additional discovery, but will affect the scope and breadth of the issues and claims in this case"; and (5) MAdler cancelled his deposition with one day's notice because he was advised by counsel not to answer any questions besides his name or biographical information pursuant to his Fifth Amendment rights.  (Doc. 64 at 3-5.)

Defendants Jerome Wenger (JWenger) and Sharon Altman (SAltman) oppose Erus' Motion.  (Doc. 74.)  Specifically, they contend that they believe there is no basis for liability against them in this action, the Court should deny Erus' request to add additional parties, and Erus has had sufficient time to complete discovery.  MAdler has not responded to Erus' Motion, and the time to do so has passed.  LRCiv 7.2(c).

As detailed below, the Court will grant Erus additional time to depose MAdler, and will grant in part and deny in part Erus' request to add new parties.   Accordingly, the Court will extend the case management deadlines in this matter as follows:

- The deadline for completing MAdler's deposition is **September 16, 2016**.
- The deadline for completing fact discovery is **October 28, 2016**.
- The parties shall provide full and complete expert disclosures by **August 26, 2016**.
- Rebuttal expert disclosures shall be completed by **September 23, 2016**.
- Expert depositions shall be completed by **October 28, 2016**.
- Dispositive motions shall be filed no later than **December 16, 2016**.

## II.   Motion to Compel MAdler's Deposition[2]

### a.  Background

On November 2, 2015, Erus noticed the deposition of MAdler for November 13, 2015, in Philadelphia.  (Doc. 69-4 at 2-3.)   The parties also scheduled the depositions of JWenger and SAltman for the previous day, November 12, 2015, in Philadelphia.   (Doc. 69 at 3.)  MAdler's counsel, Robert Mann, asserts that on November 10, 2015, he learned that MAdler had received an SEC subpoena.  (Doc. 78 at 2.)   After a preliminary investigation, Mr. Mann asserts, MAdler decided to invoke his Fifth Amendment

---

[2] The Court finds that the Motion is suitable for resolution based on the briefs. Accordingly, the Court denies the parties' requests for oral argument. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

privilege to questions asked during his deposition.  (*Id.*)  Mr. Mann informed counsel of MAdler's decision the day before MAdler was to be deposed.  (*Id.*)  It appears that the parties, after the other depositions were completed on November 12, 2015, put their positions on the record:

> BY MR. FRAME:
>
> Q. Mr. Adler, my name is Paul Frame. I represent Erus Builders in this matter, and I understand there's something you want to put on the record about this deposition.
>
> A. Yes.
>
> Q. Okay. Go ahead, sir.
>
> A. On the advice of counsel, I invoke my right under the Fifth Amendment of the United States Constitution and all applicable state constitutions not to answer on the grounds I may incriminate myself.
>
> MR. FRUTKIN: So I'll put on the record that with respect to any substantive question, other than his name or basic biographical information, that would be his response, and that applies to any  question based on a pending government investigation.
>
> MR. FRAME: Okay.
>
> MR. HARVEY: This is Mr. Harvey. I would ask a series of questions at this deposition if it wasn't asked by the plaintiff about my client's noninvolvement in this deposition -- Ms. Altman's noninvolvement and the fact that there's no basis for liability against either of my clients. And do I understand that he would answer -- he would refuse to answer all those question on the same basis?
>
> MR. FRUTKIN: Correct. And so, to the extent that you have any questions that he's -- that he would otherwise respond to, we'll preserve the record for you just as much as Erus, that he refused to respond to those questions as well on Fifth Amendment grounds.
>
> MR. HARVEY: Okay. Well, we -- you know, I understand your position. We don't agree with it. We think that there's probably a lot of questions he could answer.  We reserve the right to move to compel as necessary, but I understand your position, and there's no sense bringing him down.
>
> . . . .
>
> MR HARVEY: Just to clarify, this was the deposition that was going to take place tomorrow.  Counsel just called me at my office upstairs and asked me to come down.   They

1   advised that this was going to happen.  And so we're doing
2   this in lieu of having Mr. Adler appear at his deposition
    tomorrow.  And make this -- and I understand what you're
3   saying is, he would invoke his Fifth Amendment rights to
    anything related to this beyond his name.

4   MR. FRUTKIN:  Correct.  And with that being said,
5   obviously, there may come a time where there is more
    information known specifically about what the scope of the
6   inquiry is that would allow him the ability to respond to
    various questions; however, right now, he's invoking that
7   with respect to any question whatsoever, so that we're clear.

8   (Doc. 69-8 at 4-7.)

9       Erus now moves to compel the Deposition of MAdler.  (Doc. 69.)  Erus contends

10  that MAdler improperly cancelled his deposition the day before it was scheduled to take

11  place, after Erus' counsel had traveled to the East Coast, based on an assertion that his

12  Fifth Amendment rights protect him from testifying in this matter.[3]  Erus also requests

13  the Court order MAdler to pay Erus' attorneys' fees caused by his failure to appear at his

14  deposition.  (*Id.* at 8.)

15      MAdler opposes Erus' Motion, arguing that Erus failed to comply with the Court's

16  Scheduling Order, Erus failed to meet and confer regarding rescheduling MAdler's

17  deposition, Erus chose to cancel the deposition, MAdler did not fail to appear, MAdler's

18  current counsel was not aware of the SEC Subpoena until November 10, 2015, and

19  MAdler has a right to invoke his Fifth Amendment rights.  (Doc. 78 at 3-15.)  MAdler

20  further seeks his attorney's fees incurred in having to respond to Erus' Motion to

21  Compel.  (*Id.* at 16.)

22      **b.  Discussion**

23      As an initial matter, the Court's Case Management Order provides the following:

24      6. Discovery Disputes

25

26      [3] Erus further asserts that MAdler has provided "incorrectly redacted or otherwise
27  illegible or wrongly redacted or edited bank materials."  (*Id.* at 4.)  It is unclear whether
    Erus is seeking an order to compel MAdler to produce further information.  To the extent
28  Erus seeks such relief, the Court denies that request pursuant to Rule 37 of the Federal
    Rules of Civil Procedure, Rule 37.1 of the Local Rules of Civil Procedure, and the
    Court's Scheduling Order.

a. The parties may not file written discovery motions without leave of Court.[] If a discovery dispute arises, the parties must promptly contact the Court to request a telephonic conference concerning the dispute. The Court will seek to resolve the dispute during the telephonic conference, and may enter appropriate orders based on the conference. The Court may order briefing, if necessary.

b. Parties shall not contact the Court concerning a discovery dispute without first seeking to resolve the matter through personal or telephonic consultation and sincere effort as required by LRCiv 7.2(j). Any briefing ordered by the Court must also comply with LRCiv 7.2(j).

(Doc. 36 at 4.)[4]  Here, Erus did not seek leave before filing its Motion to Compel in violation of the Court's Case Management Order, which has caused delay and the parties to incur additional and unnecessary fees in resolving this dispute.  Erus acknowledges in its Reply that it failed to comply with the Court's Case Management Order, but asserts it did so "in hopes of expediting [the] process."  (Doc. 85 at 8.)

**The parties must fully comply with the Court's Orders.  Such compliance is <u>NOT</u> optional**.  Although the Court could deny or strike Erus' Motion for its failure to comply with the Court's Case Management Order, in the interest of judicial economy, the Court will address Erus' Motion based on the parties' briefing.

As the parties appear to agree, the Fifth Amendment privilege must be invoked on a question-by-question basis.  (Doc 69 at 7-8; Doc. 78 at 13.)  Specifically, "[t]he only way the privilege can be asserted is on a question-by-question basis, and thus as to each question asked, [MAdler] has to decide whether or not to raise his Fifth Amendment right."  *Doe v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000); *see also United States v. Seifert*, 648 F.2d 557, 560 (9th Cir. 1980) ("[A] non-party witness cannot refuse to take the stand. His privilege arises only when he asserts it as to a question put to him, and it is for the court to say whether he is entitled to the privilege."); *United States v. Tsui*, 646 F.2d 365, 367 (9th Cir. 1981) ("Even when the District Court is satisfied that the witness has a valid Fifth Amendment claim with regard to some issues, the court must permit the questioning to establish the scope of the witness' claim and to determine whether there

---

[4] The Court's May 21, 2015 Case Management Order was modified by the Court's October 6, 2015 Order at Doc. 49 as to dates only.

are other issue as to which the witness would not be able to assert the privilege."). Therefore, a "blanket claim of privilege is simply not sufficient." *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981).

Here, it appears from the record that MAdler conveyed his intent to assert his Fifth Amendment rights to almost all of Erus' questions.  However, those questions were never asked.  Therefore, the Court cannot determine whether invocation of his Fifth Amendment rights in response to Erus' questions is proper.

Erus is entitled to depose MAdler because he is a named party.  *See* Fed. R. Civ. P. 30(a)(1).  And, as stated above, a blanket assertion of Fifth Amendment protections is not a sufficient basis on which to not answer questions during a properly noticed deposition. Accordingly, the Court will order MAdler to appear for a properly noticed deposition. The parties shall have until **September 16, 2016** to complete the deposition.  This deadline will allow the Court time to address any discovery disputes regarding MAdler's deposition prior to the fact discovery cut off.[5]  MAdler may not assert a blanket claim of privilege to all potential questions posed by Erus.  MAdler may, instead, refuse on Fifth Amendment grounds to answer any "questions which present a 'real and appreciable danger of self-incrimination.'"  *McCoy v. Comm'r*, 696 F.2d 1234, 1236 (9th Cir. 1983) (quoting *United States v. Neff*, 615 F.2d 1235, 1238 (9th Cir. 1980)).

The Court will deny the parties' requests for fees.  Erus' counsel was already in Philadelphia for other depositions, did not contact the Court when the issue arose, and filed a Motion to Compel not authorized by the Court's Case Management Order.  The Court will also deny MAdler's request for attorneys' fees because, as detailed above, his

---

[5] As stated in the Court's Scheduling Order at Doc. 36, "[a]bsent extraordinary circumstances, the Court will not entertain fact discovery disputes after the deadline for completing fact discovery, and will not entertain expert discovery disputes after the deadline for completing expert discovery."

1    blanket invocation of his Fifth Amendment rights was not appropriate.[6]

2    **III.    Motion to Add Parties**

3           Erus seeks to add eight new defendants: (1) Aztec Solar Power LLC (ASP); (2)

4    Aztec Solar Renewables, Inc. (ASR); (3) Skreem Studios, LLC (Skreem); (4) Martin

5    Consultants, Inc. (Martin Consultants); (5) Allstar Consulting and Entertainment, Inc.

6    (Allstar); (6) Jeffrey Martin (JMartin); (7) Thomas Moore (TMoore); and (8) Bruce

7    Wenger (BWenger).   (Doc. 66 at 2-7.)   In its "Notice," Erus asserts various claims

8    against these new parties.   (Id. at 1-2.)

9           JWenger and SAtlman oppose Erus' Motion, arguing that Erus failed to comply

10   with the Local Rules of Civil Procedure, and adding the parties Erus identifies would be

11   futile.  (Doc. 75.)   In reply, Erus attached a proposed First Amended Complaint that

12   includes new allegations and claims against the individuals and entities Erus seeks to add.

13   (Doc. 84.)   On April 12, 2016, the Court ordered the parties to submit supplemental

14   briefing regarding whether any of Erus' proposed amendments are futile.  (Doc. 95.)  On

15   April 26, 2016, Erus submitted a Supplemental Brief.  (Doc. 98.)   On May 10, 2016,

16   Defendants MAdler, JWenger, and SAltman filed Responses to Erus' Supplemental

17   Brief.  (Docs. 110, 111.)[7]

18              **a.  Amendment Standard Pursuant to Rules 15 and 20**

19          Erus seeks to amend its Complaint to add eight new defendants under Rule 20 of

20   the Federal Rules of Civil Procedure.  (Doc. 66.)   When a party seeks to amend a

21

22          [6] Erus and MAdler each claim the other is responsible for "cancelling" the
     deposition.  However, the record does not provide the Court with a sufficient basis on
23   which to find any party acted in bad faith or to issue discovery sanctions.  It appears from
     the record that the parties agreed to cancel the November 13, 2015 deposition in light
24   MAdler's position that he would invoke his Fifth Amendment rights as to any substantive
     questions asked at the deposition scheduled for the following day.

25          [7] The Court notes that MAdler's Response to Plaintiff's Supplemental Briefing
26   does not specifically address Erus' proposed amendments.  (Doc. 110.)  Rather, MAdler
     requests the Court first rule on his pending Motion for Summary Judgment, which seeks
27   judgment in MAdler's favor based on the allegations in Erus' initial, and not proposed
     First Amended, Complaint.  As detailed in this Order, the Court will grant Erus' Motion
28   to depose MAdler and grant in part and deny in part Erus' Motion to add parties.
     Therefore, the Court will deny MAdler's request to first rule on his pending Motion for
     Summary Judgment.

pleading, Rule 15 of the Federal Rules of Civil Procedure is generally applicable, even where a party seeks to amend to add new parties.  Because Rule 20 also regulates whether parties may be joined, however, the court must consider whether the proposed amended pleading to add parties meets the requirements of both Rules 15 and 20.  *See Desert Empire Bank v. Ins. Co. of N. Am., 623* F.2d 1371, 1374 (9th Cir. 1980); *Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 618 (4th Cir. 2001) (stating that a "court determining whether to grant a motion to amend to join additional plaintiffs must consider both the general principles of amendment provided by Rule 15(a) and also the more specific joinder provisions of Rule 20(a).") (citing *Desert Empire Bank*, 623 F.2d at 1374).

"In exercising the discretion provided by Rules 15 and 20, courts have shown a strong liberality in allowing parties to amend their pleadings when such amendments have satisfied the explicit requirements of the rules."  *Desert Empire Bank*, 623 F.2d at 1375-76.  However, the Court should consider the following factors in determining whether a motion to amend should be granted: (1) whether the pleading at issue has been previously amended, (2) futility of the amendment, (3) bad faith, (4) undue delay, and (5) prejudice to the opposing party.  *Forman v. Davis*, 371 U.S. 178, 182 (1962); *see also Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991); *W. Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991).  "Generally, this determination should be performed with all inferences in favor of granting the motion."  *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)).

Here, Defendants JWenger and SAltman oppose Erus' Motion to add new parties as futile because the amendments would be subject to dismissal for failure to state a claim.  (Docs. 75, 111.)  Below, the Court addresses whether Erus' proposed amendments are futile.

### b.  Futility of Amendments – Failure to State a Claim

Rule 8(a) of the Federal Rules of Civil Procedure provides that to state a claim for

relief, a complaint must contain (1) "a short and plain statement of the grounds for the court's jurisdiction," (2) "a short and plain statement of the claim showing that the pleader is entitled to relief," and (3) "a demand for the relief sought."  The complaint also must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  In reviewing a complaint for failure to state a claim, the Court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  However, the Court does not have to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Id.*

### c.  Erus' Theories of Liability

In addition to asserting direct claims of liability against the new parties Erus seeks to add, Erus seeks to assert contract and/or tort claims against the parties under various theories of derivative liability, including alter ego and joint venture theories.  (Doc. 84 ¶¶ 58-60, 65-66.)  Arizona law recognizes a presumption of corporate separateness under which one corporation is not liable for the actions of another.  *See Deutsche Credit Corp. v. Case Power & Equip. Co.*, 876 P.2d 1190, 1196 (Ariz. Ct. App. 1994).  Similarly, in Arizona, a corporation is treated as a separate entity, and the personal assets of a corporate officer or shareholder generally may not be reached to satisfy corporate liabilities.  *Loiselle v. Cosas Mgmt. Group*, LLC, 228 P.3d 943, 950 (Ariz. Ct. App.

1   2010); *Honeywell, Inc. v. Arnold Const. Co., Inc.*, 654 P.2d 301, 307 (Ariz. Ct. App.

2   1982).  However, there are exceptions to these rules, some of which are relevant here and

3   are discussed below.

### i.  Alter Ego

5       Erus asserts that the new parties are alter egos of each other and the other

6   Defendants.  As an initial matter, the Court will deny Erus' Motion as to all of the

7   proposed new defendants to the extent Erus seeks to assert an independent claim for alter

8   ego against any them because Arizona does not recognize such an independent claim.[8]

9   *See Airbus Ds v. Nivisys LLC*, No. CV-14-02399-PHX-JAT, 2016 U.S. Dist. LEXIS

10  58684, at *7-8 (D. Ariz. May 2, 2016) ("Defendants are correct in noting that Arizona

11  does not recognize piercing the corporate veil[] or alter ego as an independent cause of

12  action."); *Five Points Hotel P'ship v. Pinsonneault*, 11-CV-00548-PHX-JAT, 2014 U.S.

13  Dist. LEXIS 60627, at *8-13 (D. Ariz. May 1, 2014) (finding that although the Arizona

14  Supreme Court has not directly addressed the issue, overwhelming persuasive

15  jurisprudence leads to the prediction that it would not recognize piercing the corporate

16  veil or alter ego as a standalone cause of action under Arizona law).

17      However, a plaintiff may plead derivative liability under an alter ego theory.  The

18  alter ego doctrine is generally applied between private parent and subsidiary corporations

19  or between a private corporation and one of its shareholders.  *See, e.g.*, *Gatecliff v. Great*

20  *Republic Life Ins. Co.*, 821 P.2d 725, 728 (Ariz. 1991); *Dietel v. Day*, 492 P.2d 455, 457

21  (Ariz. Ct. App. 1972).  To prevail on an alter ego theory, Erus must "prove both (1) unity

22  of control and (2) that observance of the corporate form would sanction a fraud or

23  promote injustice." *Gatecliff*, 821 P.2d at 728 (citing *Dietel*, 492 P.2d at 457).

24      Between corporations, the alter ego theory "allows a parent corporation to be held

25  liable for the acts of its subsidiary when the individuality or separateness of the

26  subsidiary corporation has ceased."  *U-Haul Int'l v. Nat'l Fire Ins. Co.*, 10-CV-1047-

27  

28      [8] Erus' Proposed First Amended Complaint includes a separate "Alter Ego" Count
(Count IV) against all Defendants.  (Doc. 84 at 13.)

PHX-SMM, 2011 U.S. Dist. LEXIS 219, at *10 (D. Ariz. Jan. 3, 2011) (quoting *Gatecliff*, 821 P.2d at 728). To establish unity of control, Erus must show that the parent corporation "exerts 'substantially total control over the management and activities' of its subsidiary." *Id.* at *10. "Substantially total control may be proved" by a number of factors, including "stock ownership by the parent; common officers or directors; financing of subsidiary by the parent; payment of salaries and other expenses of subsidiary by the parent; failure of subsidiary to maintain formalities of separate corporate existence; similarity of logo; and plaintiff's lack of knowledge of subsidiary's separate corporate existence." *Gatecliff*, 821 P.2d at 728.

"The corporate fiction will [also] be disregarded when the corporation is the alter ego or business conduit of a person." *Dietel*, 492 P.2d at 457. In assessing unity of control between a corporation and its shareholders, the Court considers: "payment of salaries and expenses of the corporation by shareholders; failure to maintain corporate formalities; undercapitalization; commingling of corporate and personal finances; plaintiff's lack of knowledge about a separate corporate existence; owners' making of interest-free loans to the corporation; and diversion of corporate property for personal use." *Great Am. Duck Races, Inc. v. Intellectual Solutions, Inc.*, 2:12-cv-00436 JWS, 2013 U.S. Dist. LEXIS 36190, at *7 (D. Ariz. Mar. 15, 2013) (citing *Deutsche Credit Corp.*, 876 P.2d at 1195).

A plaintiff alleging alter ego liability "must do more that make conclusory statements regarding an alter ego relationship between individual and corporate defendants; the plaintiff must allege specific facts supporting application of the alter ego doctrine." *Barba v. Lee*, No. CV 09-1115-PHX-SRB, 2009 U.S. Dist. LEXIS 132415, *31 (D. Ariz. Nov. 4, 2009). Isolated occurrences of some of the relevant factors are not enough to establish alter ego liability. *Cornelis v. B&J Smith Associates LLC*, No. CV-13-00645-PHX-BSB, 2014 U.S. Dist. LEXIS 63776, at *26 (May 8, 2014).

### ii.  Joint Venture

Erus also asserts claims against the entities based on a joint venture theory of

liability. The Arizona Supreme Court has described a joint venture as a "special combination of two or more persons where in some special venture a profit is jointly sought." *Ariz. Pub. Serv. Co. v. Lamb*, 327 P.2d 998, 1000 (Ariz. 1958); *U-Haul Inter. Inc.*, 2011 U.S. Dist. LEXIS 219, at *8-10. A joint venture requires five specific elements: (1) an agreement, (2) a common purpose, (3) a community of interest, (4) an equal right of control, and (5) participation in profits and losses. *Estate of Hernandez v. Flavio*, 930 P.2d 1309, 1312 (Ariz. 1997).

> Either expressly or impliedly, the agreement must indicate that "each of the parties to such joint adventure has authority to act for all in respect to the control of the means or agencies employed to execute such common purpose." *West*, 85 Ariz. at 262, 336 P.2d at 157. Each party to the joint venture must have an "equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control or management." *Maloy v. Taylor*, 86 Ariz. 356, 359, 346 P.2d 1086, 1088 (1959) (citations omitted).

> While the "equal right to control" element of a joint venture could imply that each venturer must have an equivalent amount of control over the venture's operation, we believe it is more accurate to say that each joint venturer must share, to some extent, in the control of the venture. In other words, it is sufficient that a venturer has some voice or right to be heard in the control and management of the venture.

*Flavio*, 930 P.2d at 1312.

### iii. Instrumentality Theory

Erus does not explicitly reference an instrumentality theory of liability in its First Amended Complaint. However, it repeatedly asserts that certain entities were "conduits" for Volt's[9] and/or the individual Defendants' alleged unlawful conduct. (Doc. 84 ¶¶ 59, 62, 74, 79, 85, 116.) Therefore, the Court will analyze whether Erus' proposed First Amended Complaint has asserted sufficient facts to state a claim against any of the entities under this theory. As another Court in this District has explained:

> Distinct from but similar to the alter ego theory is the fourth way in which a parent company can be liable to a subsidiary: the instrumentality theory. *Id.* at 729. "When one corporation so dominates and controls another as to make that other a simple instrumentality or adjunct to it, the courts will

---

[9] Erus uses the term "Volt" to refer to both Volt Solar Systems, LLC and Volt Solar Systems, Inc. (Doc. 84 ¶ 21; Doc. 98 n.2.) Defendants JWenger and SAltman oppose that characterization. (Doc. 102 at 4-5.) However, for purposes of evaluating Erus' proposed amendments only, the Court will use "Volt" to refer to both entities.

look beyond the legal fiction of distinct corporate existence, as the interests of justice require.[*] *Walker v. Sw. Mines Dev. Co.*, 52 Ariz. 403, 81 P.2d 90, 95 (Ariz. 1938); *See also Savage v. Royal Props.*, Inc., 4 Ariz. App. 116, 417 P.2d 925, 927 (Ariz. Ct. App. 1966) ("[T]he fiction of corporate entity must be disregarded where one corporation is so organized and controlled, and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation."). As with the alter ego theory of liability, "[p]laintiffs must [] demonstrate some form of injustice under an instrumentality theory." *Gatecliff*, 821 P.2d at 730.

*U-Haul*, 2011 U.S. Dist. LEXIS 219, at *11.

Below, the Court analyzes Erus' specific requests to add parties to the claims in its First Amended Complaint.[10]

### d. Erus' Amendments

#### i. Counts I and II – Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing (Against ASP, ASR, Skreem, Martin Consultants, and Allstar)

Erus seeks to assert claims against ASP, ASR, Skreem, Martin Consultants, and Allstar for breach of contract and breach of the covenant of good faith and fair dealing. (Doc. 84 ¶¶ 67-79.)

To state a claim for breach of contract, Erus must allege the existence of the contract, its breach, and resulting damages. *See Thomas v. Montelucia Villas*, 302 P.3d 617, 621 (Ariz. 2013). Further, Arizona law implies a duty of good faith and fair dealing in every contract. *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986). The covenant prohibits the parties to a contract from "any action which would impair the benefits which the other had the right to expect from the contract or the contractual relationship." *Id.* at 570. Parties may "breach [the] duty of good faith without actually breaching an express covenant in the contract." *Wells Fargo Bank v. Ariz. Laborer, Teamster & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 29 (Ariz. 2002).

Here, Erus asserts that it entered into a contract with Volt. (*Id.* ¶ 27.) Erus does not assert that any of the entities it seeks to add were a party to the contract. Rather, Erus asserts that those entities are liable under theories of derivative liability because "they

---

[10] In this Order, the Court only analyzes whether Erus' proposed amendments are futile. It does not address the sufficiency of Erus' First Amended Complaint with regard to claims against the Defendants named in Erus' initial Complaint.

served as a conduit for Volt's breach [of contract], and share a unity of interest between and among them." (*Id.* ¶¶ 59-60, 74, 79.)

The Court finds that Erus has stated a claim for relief against ASR and ASP in Counts I and II of the First Amended Complaint. Specifically, Erus asserts that Volt had an agreement with ASR and ASP to procure clients on Volt's behalf, ASP made false statements or misrepresentations, through JWenger and BWenger, regarding the product Erus contracted to purchase, and ASP and ASR were used as shells in a conspiracy to defraud Erus of the funds it gave to Volt under the contract. (*Id.* ¶¶ 42-43, 106-07.) Such allegations, together, are sufficient to establish that ASP and ASR were directly involved in the breach and/or acted as joint ventures with Volt. *Gatecliff*, 821 P.2d at 728; *Farr v. Transamerica Occidental Life Ins. Co.*, 699 P.2d 376, 386 (Ariz. Ct. App. 1984). Accordingly, the Court will grant Erus' Motion to add ASP and ASR to Counts I and II of the First Amended Complaint.

The Court finds that Erus has failed to state a claim for relief against Skreem, Martin Consultants, and Allstar in Counts I and II of the First Amended Complaint. Although Erus asserts that Volt transferred funds to Skreem after Erus made its payment to Volt, and the transfers "contributed to Volt's insolvency," Erus does not specifically allege any direct involvement by Skreem in the contract, or Volt's breach of the contract. (Doc. 84 ¶¶ 45-48.)[11] Importantly, Erus does not assert any factual allegations regarding who directed the transfers to be made from Volt to Skreem or for what purpose the transfers were made. Although in its Supplemental Brief Erus asserts that Skreem was "involved in the dealings between the parties and benefited from [Erus'] payments to Volt," and in its First Amended Complaint asserts that all of "the ALTER EGO COMPANIES," combined, served as a "conduit for Volt's breach," Erus fails to include any factual allegations regarding the transfer of funds between Volt and Skreem other

---

[11] Erus asserts that it paid Volt a total of $625,000 between May 8, 2014 and May 26, 2014, and $105,598 on some date after August 4, 2014. (*Id.* ¶¶ 27-34.) Erus asserts that Volt paid Skreem a total of $116,600, out of two different accounts, in 11 payments, between July 14, 2014 and October 22, 2014. (*Id.* ¶¶ 46-47.)

than the dates and amounts.  (Doc. 98 at 5-6; Doc. 84 ¶¶ 43-46.)  Erus' conclusory allegations that all of the entities were created by all the individuals Erus identifies, as part of a fraudulent scheme, are insufficient.  *Iqbal*, 556 U.S. at 678. Erus likewise fails to assert any specific allegations of direct involvement in the contract and/or breach by Martin Consultants or Allstar.

Erus also fails to assert claims against these three entities under any derivative liability theory.  Lumping the entities together, Erus asserts that (1) they "were involved" with Volt in exchange for the forgiveness of debt owed by JMartin and related (unidentified) entities controlled by him; (2) they "served as a conduit for Volt's breach, and share a unity of interest between and among them"; (3) they are "now a mere shell and naked framework," which the individual Defendants use "as a conduit for the conduct of their personal business, property and affairs"; (4) they were created "pursuant to a fraudulent plan, scheme and device conceived and operated by the individual Defendants, whereby the income revenue and profits of [each of the companies] were diverted by the individual Defendants to themselves and to other [unspecified] corporations controlled by the individual Defendants"; (5) the entities have the same business location, telephone number, and e-mail system; and (6) all of the entities "pooled assets, revenues, or use of one corporation's financial resources to pay or guaranty the other's obligations."  (Doc. 84 ¶¶ 59, 109.)  Erus also asserts that JMartin is an Officer of Skreem and an owner of Volt.  (*Id.* ¶¶ 23, 51.)

Erus' allegations are too conclusory and vague to state claims for breach of contract or breach of the covenant of good faith and fair dealing against Skreem, Martin Consultants, or Allstar under alter ego, joint venture, or instrumentality theories of liability.  Although Erus asserts that the individual Defendants all controlled these entities, and used them to perpetuate a fraudulent scheme, Erus fails to set forth sufficient specific factual allegations to show that any of these three entities were the alter ego of Volt.  Erus asserts that all of the entities have the same e-mail, business location and telephone, and asserts there is a common Officer/owner between Volt and Skreem in

JMartin.  (*Id.* ¶¶ 23, 59, 51.)  However, beyond those allegations, Erus fails to set forth any specific allegations demonstrating that Skreem, Martin Consultants, or Allstar exerted "substantially total control over the management and activities of" Volt, sufficient to allow any of the three entities to be liable for Volt's breach of the contract with Erus.[12]

Erus also fails to sufficiently plead liability against the three entities under a joint venture theory.  Erus asserts that Martin Consultants, Allstar, and Skreem "were involved with Volt in exchange for the forgiveness" of JMartin's debt and the debt of other, unidentified entities.  (*Id.* ¶ 109.)  However, Erus fails to allege that any of the three entities had an equal right of control or participated in both profits and losses with Volt or that there was any agreement between them.  Therefore, Erus has failed to sufficiently plead liability in Counts I and II against these three entities under a joint venture theory.

Finally, Erus fails to sufficiently plead liability against these entities under an instrumentality theory.  Although Erus alleges that the entities were each a "conduit for Volt's breach," Erus has failed to assert any factual allegations to show that Volt "so dominat[ed] and control[ed]" Martin Consultants, Allstar, and/or Skreem as to make any of them the instrumentality of Volt (or vice versa).  Notably, although Erus alleges that JMartin is an Officer Skreem and an owner of Volt, Erus asserts that Volt has other owners and officers who are not affiliated with Skreem, Martin Consultants, or Allstar.  (*Id.* ¶ 23.)  And, Erus' conclusory allegation that all of the individual Defendants used all of the entities as conduits for fraudulent conduct is insufficient.  Therefore, the Court will

---

[12] The Court also finds that Erus has failed to sufficiently plead Skreem, Martin Consultants, or Allstar were, or are, the alter ego of JMartin.  As stated above, Erus asserts conclusory allegations with regard to all of the Defendants as one group.  Erus does not assert specific factual allegations with regard to JMartin's relationship with Skreem, Martin Consultants, or Allstar, other than he is an Officer of Skreem, in exchange for these three entities being "involved" in some unidentified way with Volt, Volt forgave debt owed by him, and the Board tendered shares of Volt to him.  (*Id.* ¶¶ 51, 109.)  These allegations are insufficient.  *Cornelis*, 2014 U.S. Dist. LEXIS 63776, at *28 ("Although [p]laintiffs apparently include B&J Smith Associates and B&J Smith Investments under the collective term 'corporate defendants,' they failed to set forth facts regarding each separate entity's relationship with Eatza Pizza and how each separate entity exercised substantially total control over the management and activities of Eatza Pizza.").

deny Erus' Motion to add Skreem, Martin Consultants, and Allstar to Counts I and II of the Complaint.

### ii. Count III – Negligent Misrepresentation (Against ASP, ASR, Skreem, Martin Consultants, Allstar, JMartin, TMoore, and BWenger)

To state a claim for negligent misrepresentation, (1) there must be incorrect information given for the guidance of others in business dealings; (2) the party giving the false information intended, or could reasonably foresee, that the other parties would rely on that information; (3) the party giving the false information failed to exercise reasonable care in obtaining or communicating that information; (4) the other parties actually relied on the incorrect information to their determent and were justified in doing so; and (5) such reliance caused their damages. *See Taeger v. Catholic Family & Cmty. Serv.*, 995 P.2d 721, 730 (Ariz. Ct. App. 1999).

Rule 9(b) requires that a plaintiff alleging fraud or mistake "state with particularity circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) has been interpreted by the Ninth Circuit Court to require the plaintiff to "state the time, place, and specific content of the false representations as well as the identities of parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furn. Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged."). The plaintiff must also "set forth an explanation as to why the disputed statement was untrue or misleading when made." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999).

Here, Erus asserts in its First Amended Complaint that Volt, ASP, JWenger, and BWenger made misrepresentations regarding the use of the money Erus paid Volt, the need to tender additional funds, the date of delivery, and where the funds would be held, Erus relied on those misrepresentations, and such reliance caused Erus damage. (Doc. 84 ¶¶ 28-34, 36.) Further, with regard to at least some of the alleged misrepresentations, Erus provides a timeframe of when the statements were made and who made them. (*Id.*

¶¶ 31, 33-34, 36.)  Therefore, the Court finds that Erus has sufficiently pled claims for negligent misrepresentation against ASR, ASP, BWenger, and JWenger, and will grant Erus' Motion to add those parties to Count III of the First Amended Complaint.

The Court likewise finds that Erus has sufficiently pled claims for negligent misrepresentation against JMartin and TMoore based on an alter ego theory. Specifically, Erus asserts that JMartin is an owner of Volt (*id.* ¶ 23), the Volt Board of Directors authorized the issuance of common stock in exchange for the forgiveness of the total principal and interest balances owed to JMartin and related entities (*id.* ¶¶ 52-54), the debt forgiven was $190,822 but the transaction was valued at $1,927,211 (*id.* ¶ 53), and JMartin contributed to undercapitalizing Volt and diverted corporate funds for his own personal use (*id.* ¶¶ 52-55, 59, 62).  Further, Erus asserts that TMoore was an Officer of Volt and had control over Volt's finances and accounts, and, along with the other individual Defendants, comingled corporate funds from the escrow account to pay personal debt.  (*Id.* ¶¶ 56, 57, 62, 86, 133-34.)  Erus further asserts that both individuals were part of an agreement to defraud Erus of the funds it paid to Volt.  (*Id.* ¶ 133.) Finally, Erus asserts that all of the Defendants participated in a fraudulent plan and scheme to divert Erus' funds to other corporations.  (*Id.* ¶ 59.) The Court finds these allegations, taken together, are sufficient to assert claims that JMartin and TMoore, as owners and/or Officers of Volt, are liable for the alleged negligent misrepresentations made by Volt.

The Court finds, however, that Erus has failed to sufficiently plead claims for negligent misrepresentation against Skreem, Martin Consultants, and Allstar.  Erus does not allege any direct involvement by any of these three entities in the transactions between Erus and Volt.  As detailed above, Erus asserts that Volt transferred $116,600 to Skreem over the course of several months and that the transfers contributed to Volt's insolvency.  (*Id.* ¶¶ 45-48.)  Erus also alleges that all of the entities, including Skreem, were used as a "conduit for Volt's breach, and share a unity of interest between and among them."  (*Id.* ¶¶ 74, 79.)  Erus further claims that JMartin is an Officer of Skreem

1    and an owner of Volt, and Skreem, Martin Consultants, and Allstar "were involved" with

2    Volt in some unidentified way "in exchange for the forgiveness of the total principal and

3    interest balances owed to Jeffrey Martin and related entities controlled by him."   (*Id.* ¶¶

4    23, 51, 109.)  However, these allegations, alone, do not establish that Skreem was directly

5    involved in the transactions between Erus and Volt.

6          Furthermore, Erus fails to sufficiently plead any theories of derivative liability

7    against these three entities.   Notably, Erus does not allege any specific allegations

8    regarding any substantial control between these three entities, on one hand, and Volt,

9    ASP, ASR, BWenger, or JWenger—the entities and individuals who made the

10   representations—on the other.  Erus does not allege that BWenger or JWenger are owners

11   of any of the three entities, and Erus does not allege that JMartin, an Officer of Skreem,

12   made any misrepresentations.   Erus further does not allege that Skreem, Martin

13   Consultants, or Allstar shared in the profits and losses of Volt, ASP, or ASR.  Therefore,

14   the Court will deny Erus Motion to Add Skreem, Martin Consultants, and Allstar to

15   Count III of the First Amended Complaint.

16          ### iii.   Count V[13] – Fraud (Against BWenger, ASR, and ASP)

17          "A showing of fraud requires (1) a representation; (2) its falsity; (3) its materiality;

18   (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent

19   that it be acted upon by the recipient in the manner reasonably contemplated; (6) the

20   hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely

21   on it; [and] (9) his consequent and proximate injury."  *See Echols v. Beauty Built Homes,*

22   *Inc.*, 647 P.2d 629, 631 (Ariz. 1982); *Carrel v. Lux*, 420 P.2d 564, 568 (Ariz. 1966).  Erus

23   must plead this claim with particularity.  *See* Fed. R. Civ. P. 9(b); *Vess*, 317 F.3d at 1102

24   ("Averments of fraud must be accompanied by the 'who, what, when, where, and how' of

25   the misconduct charged."); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101,

26   _____

27         [13] Count IV of Erus' First Amended Complaint asserts an independent claim for
     alter ego.   As detailed in section III.c.i. above, Arizona does not recognize such an
28   independent claim.   Therefore, the Court will deny Erus' Motion to add parties to Count
     IV.

1  1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for

2  fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements").

3       Here, Erus seeks to add BWenger, ASR, and ASP to Count V of its First Amended

4  Complaint.  For the reasons stated above with regard to Erus' claims for negligent

5  misrepresentation, the Court finds that Erus has stated claims for relief for fraud against

6  these individuals and entities, and will grant Erus' Motion to add them to Count V.

7
8            **iv.  Count VI – Money Had and Received (Against ASP, ASR, Skreem, Martin Consultants, Allstar, JMartin, TMoore, and BWenger)**

9       Erus asserts claims for "Money Had and Received" against each of the eight new

10  defendants it seeks to add.  A claim for money had and received may be maintained by

11  evidence "showing that the defendant has received or obtained possession of money of

12  the plaintiff which in equity and good conscience he ought to pay over to the plaintiff."

13  *Copper Belle Mining Co. v. Gleeson*, 134 P. 285, 287 (Ariz. 1913).  Erus claims that

14  "Defendants improperly removed the funds from an escrow account.  Plaintiff is

15  informed and believes that the funds were improperly used by Defendants for personal

16  use and not for the benefit of Erus."  (Doc. 84 ¶ 99.)   In a later Count, Erus more

17  specifically asserts that MAdler, SAltman, JWenger, JMartin, TMoore, and BWenger

18  "removed funds or induced Volt to remove funds from the escrow account designated for

19  the Agreement for among other things, corporate debt and personal use."  (*Id.* ¶ 134.)

20  Erus also asserts generally that Volt transferred $116,600 to Skreem over the period of

21  several weeks, and all of the entities, including Skreem "served as a conduit for Volt's

22  breach."  (*Id.* ¶¶ 45-48, 74, 79, 116.)

23       Several of Erus' allegations lump the defendants together and are vague and

24  conclusory.  However, in reviewing the First Amended Complaint in its entirety, the

25  Court finds that Erus has sufficiently set forth facts to state claims for relief in Count VI

26  against ASP, ASR, BWenger, JMartin, and TMoore.  Erus sets forth sufficient allegations

27  that each of these entities or individuals directly took the funds from the escrow account

28  and/or was directly involved in the transaction between Erus and Volt.  (*Id.* ¶¶ 39, 42-43,

45-48, 52-57, 134.)   Therefore, the Court will grant Erus' Motion as it relates to these entities and individuals in Count VI of Erus' First Amended Complaint.

However, for the reasons already discussed, Erus fails to sufficiently plead claims against Skreem, Martin Consultants, and Allstar.   Therefore, the Court will deny Erus' Motion to add those entities to Count VI.

### v.  Count VII – Conversion (Against ASP, ASR, Skreem, Martin Consultants, Allstar, Martin, Moore, and BWenger)

In Arizona, "conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Miller v. Hehlen*, 104 P.3d 193, 472 (Ariz. Ct. App. 2005) (quoting Restatement (Second) of Torts § 222A(1) (1965)).  Erus points to the same allegations to support this claim against all of the Defendants as those discussed above with regard to Erus' claim for money had and received.  Therefore, for the reasons detailed in the previous section, the Court will grant Erus' Motion to add Defendants ASP, ASR, JMartin, BWenger, and TMoore to Count VII.  The Court will deny the Motion as to the other entities.

### vi.  Count VIII – Waste of Corporate Assets (Against JMartin, TMoore, and BWenger)

Erus does not address this claim in its Supplemental Brief and, therefore, the Court assumes that Erus abandons its request to add parties to this claim in its First Amended Complaint.  (Doc. 98 at 10.)

### vii.  Count IX – Aiding and Abetting Breach of Fiduciary Duty (Against ASP, ASR, Skreem, Martin Consultants, Allstar, Martin, Moore, and BWenger)

To establish a claim of aiding and abetting tortious conduct, proof of three elements is necessary: "(1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 276 P.3d 11, 97 (Ariz. Ct. App. 2012) (citing Restatement (Second) of

1    Torts § 876(b)).

2          Here, Erus asserts that Volt breached its contract with Erus and engaged in tortious

3    conduct.   (Doc. 84 ¶¶ 27-36, 80-83, 88-93.)   For the reasons detailed above, the Court

4    finds that Erus has sufficiently pled that ASR, ASP, BWenger, JMartin, and TMoore

5    were directly involved/assisted Volt in converting the escrow funds.     Also for the

6    reasons discussed above, the Court finds that Erus has failed to sufficiently plead liability

7    against Skreem, Martin Consultants, and Allstar.

8                  **viii.   Count X – Intentional Interference with Contractual Relations
                        (Against ASP, ASR, Skreem, Martin Consultants, Allstar,**
9                        **JMartin, TMoore, and BWenger)**

10         "To recover for tortious interference under Arizona law, [Erus] must prove: (1) the

11   existence of a valid contractual relationship; (2) [Defendants'] knowledge of the

12   relationship; (3) [Defendants'] intentional interference in inducing or causing the breach;

13   (4) the impropriety of [Defendants'] interference; and (5) resulting damages.   *MDY*

14   *Industries, LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928, 955 (9th Cir. 2011)

15   (citation omitted).

16         Here, the Court finds that Erus has pled a claim for intentional interference with

17   contractual relations against ASP, ASR, BWenger, JMartin, and TMoore.   Erus asserts

18   that the individuals removed or assisted in removing the funds from the escrow account,

19   and used those funds for personal debt, which contributed to the failure of Volt to

20   perform its obligations under the contract.   (*Id.* ¶¶ 121, 134.)    Erus also asserts that

21   BWenger was acting on behalf of ASP and ASR.   (*Id.* ¶¶ 38-43.)   The Court finds these

22   allegations sufficient.

23         The Court finds, however, that Erus has failed to assert any factual allegations

24   tying the funds transferred from Volt to Skreem to the transaction at issue, or allegations

25   showing intentional, interfering conduct by Skreem.   The fact that the funds were paid

26   from Volt to Skreem on the time frame alleged, alone, is insufficient to plead liability

27   against Skreem.

28         Likewise, Erus fails to allege any interfering conduct by Martin Consultants and

Allstar.   Again, Erus' vague and conclusory allegations that all of the Defendants generally diverted money from the escrow account are insufficient to state a claim. Finally, as detailed above, Erus fails to sufficiently plead derivative liability against Skreem, Martin Consultants, or Allstar.  Therefore, the Court will deny Erus' Motion to add these entities to Count X of the First Amended Complaint.

### ix.   Count XI – RICO, 18 U.S.C. § 1961 (Against ASP, ASR, Skreem, Martin Consultants, Allstar, JMartin, TMoore, and BWenger)

The Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter."  18 U.S.C. § 1964(c).  Section 1962(c) of RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  Thus, to state a claim under section 1962(c), "a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern, and (4) of racketeering activity."  *Jarvis v. Regan*, 833 F.2d 149, 151-52 (9th Cir. 1987) (internal citations omitted).

Here, Erus asserts that Volt and all of the other Defendants, in making multiple fraudulent misrepresentations through the mail or wire transfers, "have conducted, and have conspired to conduct, the affairs of Volt through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d)."  (Doc. 84 ¶¶ 127-31.)  The Court will grant Erus' Motion to add ASP, ASR, and BWenger to this claim, as Erus asserts specific allegations regarding their involvement in making alleged misrepresentations regarding use of the funds Erus paid Volt, delivery of the product, and the need for additional payments from Erus.  (*Id.* ¶¶ 27-36, 39, 41-43.)  The Court will further grant Erus' Motion with regard to JMartin and TMoore because Erus asserts that, as owners or Officers, JMartin and TMoore specifically either removed Erus' money out of the escrow account or induced Volt to do so "for among other things, corporate debt and personal use."  (*Id.* ¶¶ 133-34.)

The Court will deny Erus' Motion to add Skreem, Martin Consultants, and Allstar

to this Count because Erus fails to allege any direct participation in the alleged racketeering activity by any of these entities.  Erus asserts in its Supplemental Brief that these entities "made multiple false statements and fraudulent misstatements – or conspired with other Defendants to do so."  (Doc. 98 at 13.)  However, Erus fails to identify any such fraudulent statements made by any of these entities, or any facts to establish that they "conspired" to make such statements.   *Wasco Prods. v. Southwall Techs., Inc.*, 435 F.3d 989, 990 (9th Cir. 2006) (Courts "have required the plaintiff to plead at least the basic elements of the conspiracy, especially the existence of an agreement.")  Therefore, the Court will grant Erus' Motion to add ASR, ASP, BWenger, JMartin, and TMoore to Count XI of the First Amended Complaint, and will deny the Motion as to the remaining entities Erus seeks to add.

### x. Count XII – Conspiracy (Against JMartin, TMoore, and BWenger)

"[L]iability for civil conspiracy requires that two or more individuals agree and thereupon accomplish 'an underlying tort which the alleged conspirators agreed to commit.'"  *Zowine v. Prussin*, No. CV-14-00892-PHX-GMS, 2016 U.S. Dist. LEXIS 17533 (D. Ariz. Feb. 12, 2016) (quoting *Wells Fargo,* 38 P.3d at 36).  "A mere agreement to do a wrong imposes no liability; an agreement plus a wrongful act may result in liability."  *Id*.

Here, Erus asserts that on or about August 4, 2014, JMartin, TMoore and BWenger "and each of them knowingly and willfully conspired and agreed among themselves to damage the plaintiff by depriving it of the benefits of this contract by inducing Volt to breach the Agreement," and each individual "removed funds or induced Volt to remove funds from the escrow account."  (Doc. 84 ¶¶ 133-34.)  For the reasons detailed above, the Court finds that Erus has sufficiently pled claims for conspiracy against JMartin, BWenger, and TMoore.  Therefore, the Court will grant Erus' Motion to add them to this Count.

## IV.    Motion for Settlement Conference

On April 6, 2016, MAdler filed a Motion for Referral to a Magistrate Judge for a

Settlement Conference.  (Doc. 94.)  In his Motion, MAdler asserts that "[n]o good faith settlement discussions have occurred.  Emails on the subject been exchanged in the past few days regarding settlement, but nothing specific.  No offers have been made by any party."   No other party has responded to MAdler's Motion, and the time to do so has passed.  LRCiv. 7.2(c).

The Court's Scheduling Order in this matter (Doc. 36), amended by the Court's Order at Doc. 49, provides the following:

> 8. Good Faith Settlement talks
>
> All parties and their counsel shall meet in person and engage in good faith settlement talks no later than **[January 18, 2016]**. Upon completion of such settlement talks, and no later than **seven days** after the deadline set forth in the preceding sentence, the parties shall file a Joint Report on Settlement Talks. The Report shall (a) inform the Court that the parties engaged in good faith settlement talks; (b) state the outcome of such talks; and (c) indicate whether the parties need assistance from the Court in seeking settlement of the case. The parties shall promptly file a Notice of Settlement with the Court at any time when settlement is reached during the course of this litigation.

However, MAdler's Motion indicates that the parties have not yet engaged in good faith discussions.  Further, the docket reflects that the parties have not filed the required Joint Report on Settlement Talks.  Accordingly, the Court will Order the parties to show cause why sanctions should not be imposed for their failure to comply with the Court's Order.[14]

Accordingly,

**IT IS ORDERED** that Erus' Ex Parte Application to Amend Case Management Order, or Alternatively, to Vacate Dates and Schedule New Case Management Conference (Doc. 64) is granted as provided in this Order.   The Court's Case Management deadlines are extended as follows:

- The deadline for completing MAdler's deposition is **September 16, 2016**.

- The deadline for completing fact discovery is **October 28, 2016**.

---

[14] Notably, Erus' Motion to modify the Court's case management deadlines does not include a request for an extension of the deadline to engage in good faith settlement discussions.  (Docs. 64, 65.)

- 25 -

- The parties shall provide full and complete expert disclosures by **August 26, 2016**.
- Rebuttal expert disclosures shall be completed by **September 23, 2016**.
- Expert depositions shall be completed by **October 28, 2016**.
- Dispositive motions shall be filed no later than **December 16, 2016**.

**IT IS FURTHER ORDERED** that Erus' Motion to Compel Deposition of MAdler (Doc. 69) is granted as provided in this Order.

**IT IS FURTHER ORDERED** that Erus' Motion to amend to add parties (Doc. 66) is granted in part and denied in part as follows:

- Erus' Motion to add parties to Count IV (Alter Ego) is denied.
- Erus' Motion to add parties to Count VIII (Waste of Corporate Assets) is denied.
- Erus' Motion to add ASP and ASR to Counts I, II, III, V, VI, VII, IX, X, and XI is granted.
- Erus' Motion to add BWenger to Counts III, V, VI, VII, IX, X, XI, and XII is granted.
- Erus' Motion to add JMartin and TMoore to Counts III, VI, VII, IX, X, XI, and XII is granted.
- Erus' Motion to add Martin Consultants, Skreem, and Allstar is denied.

**IT IS FURTHER ORDERED** that within **14 days** of the date of this Order, Erus shall file a clean (non-redlined) First Amended Complaint that is consistent with this Order (specifically, omitting any claims/Defendants the Court did not permit leave to amend to add).

**IT IS FURTHER ORDERED** that Erus is responsible for serving the newly added Defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that service under Rule 4(m) of the Federal Rules of Civil Procedure runs from the date of **THIS ORDER** (not the filing of the First Amended Complaint as authorized herein).

**IT IS FURTHER ORDERED** that if any Defendant believes Erus failed to comply with this Order in the to-be-filed First Amended Complaint, such Defendant may

1    file a motion to dismiss.

2        **IT IS FURTHER ORDERED** that all new Defendants are bound by the Court's

3    Rule 16 Scheduling Order (Doc. 36), as amended by the Court's Order at Doc. 49 and

4    this Order, unless such Defendant moves for a supplemental Rule 16 conference

5    contemporaneous to responding to the First Amended Complaint.

6        **IT IS FURTHER ORDERED** that Erus shall serve a copy of the Court's Rule 16

7    Scheduling Order (Doc. 36), the Court's October 6, 2015 Order amending the Rule 16

8    Order (Doc. 49), and this Order on each newly added Defendant with the summons and

9    amended complaint.

10       **IT IS FURTHER ORDERED** that in light of the Court's Orders on Erus' Motion

11   to add parties, and extending the discovery and dispositive motion deadlines, the Motions

12   for Summary Judgment pending at Docs. 102 and 104 are denied without prejudice.  The

13   Court grants Defendants MAdler, SAltman, and JWenger leave to each file **one**

14   additional motion for summary judgment on Erus' claims in its to-be-filed First Amended

15   Complaint.[15]

16       **IT IS FURTHER ORDERED** that Erus' Motion Pursuant to Rule 56(d) (Doc.

17   112) is denied as moot.

18       **IT IS FURTHER ORDERED** that within **14 days** of the date of this Order, the

19   parties shall show cause in writing why sanctions should not be imposed for the parties'

20   failure to comply with the Court's Orders to engage in good faith settlement talks no later

21   than January 18, 2016, and to file a Joint Report on Settlement.  In their responses, the

22   ///

23   ///

24   ///

25   ──────────────

26       [15] Defendants are reminded that they must fully comply with the Local Rules of
     Civil Procedure in filing a motion for summary judgment, including that motions must
27   "be in a fixed-pitch type size no smaller than ten (10) pitch (10 letters per inch) or in a
     proportional font size no smaller than 13 point, including any footnotes."   LRCiv.
28   7.1(b)(1).   All motions for summary judgment must also fully comply with the
     requirements of Rule 56.1 of the Local Rules of Civil Procedure.

parties shall also provide their positions as to whether this case should be referred to another Magistrate Judge for the purposes of conducting a settlement conference.

      Dated this 7th day of June, 2016.

Honorable John Z. Boyle
United States Magistrate Judge